IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| W. JAMES OELSNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 2014-62 |
| ) | |
| VIRGIN ISLANDS DEPARTMENT OF ) | |
| PROPERTY AND PROCUREMENT, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Before the Court is a motion by the Government of the Virgin Islands, the Virgin Islands Department of Property and Procurement ("DP&P"), and the Virgin Islands Department of Planning and Natural Resources ("DPNR") (collectively, "GVI" or "government") to dismiss plaintiff W. James Oelsner's amended complaint. [ECF 62]. Plaintiff opposed the motion [ECF 65], and later filed a supplement to his opposition [ECF 66].[1] The GVI did not file a reply. For the reasons explained below, the Court recommends that the motion to dismiss be granted.

### I.    BACKGROUND

Plaintiff's claims in this action concern the barge Witdock. Prior to filing the instant case, Oelsner was involved in another matter before this Court, the *Contract Carrier* case, which alleged similar claims regarding the Witdock and other vessels. To better understand the context of the claims here, the Court briefly summarizes the former action before turning to the case at hand.

---

[1] This Court's Local Rules permit the filing of a motion, a response, and a reply, within certain prescribed time periods. LRCi 6.1, 7.1(a). The rules do not permit additional responses or supplements absent leave of the Court. LRCi 7.1(a). Here, plaintiff timely filed his opposition on October 13, 2015. [ECF 65]. Eight months later, on June 17, 2016, and without seeking or obtaining leave to do so, he filed a supplement to his opposition. [ECF 66]. "It is beyond question that the District Court has the authority to strike filings that fail to comply with its local rules." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018). Thus, the Court may properly elect to do so here.

### A. The *Contract Carrier* Case (Civil No. 2012-68)[2]

In 2012, four entities filed suit in the District of Puerto Rico, alleging that actions and omissions by certain federal agencies resulted in the destruction of the plaintiffs' vessels and property in and around the navigable waters of the U.S. Virgin Islands. [ECF 1].[3] Those entities were Contract Carrier Services, Inc. ("CCS"), Witdock Corporation, Antilles Marine Services Company, Inc. ("AMSCO"), and West Indies Transport Limitada, S.A. *Id.* at 1.[4] The plaintiffs alleged that the federal defendants failed to exercise their jurisdiction to prevent the GVI and its contractors from confiscating and destroying the plaintiffs' vessels. *Id.* at 5–6. Although W. James Oelsner was not a named plaintiff in the action, he was described in the complaint as "an 83-year old resident of the United States Virgin Islands whose profession is Salvage Master," and he executed the Verification of the complaint. *Id.* at 9, 97. On August 16, 2012, the case was transferred to the District of the Virgin Islands. [ECF 17].

On January 18, 2013, the plaintiffs, "through their former undersigned attorneys," informed the Court that counsel had not entered an appearance in this Court and that none of plaintiffs' attorneys were admitted to practice before this Court. [ECF 24] at 1. Counsel further stated they had terminated their professional relationship with the plaintiffs, and requested time for plaintiffs to obtain new counsel. *Id.* at 2. In a February 28, 2013 Order, the Court directed the plaintiffs to secure new counsel and warned that failure to do so could result in dismissal. [ECF 25]. When

---

[2] All ECF citations in subsection A refer to Civil No. 2012-68

[3] The *Contract Carrier* complaint alleged claims relating to the barge Witdock and other vessels, described collectively as "the WIT Vessels." *See* [ECF 1] ¶ 39.

[4] The complaint explained that AMSCO was the bareboat charterer of the WIT vessels and the mortgagee of the barge Witdock, owned by the Witdock Corporation. [ECF 1] ¶¶ 9, 22. AMSCO stated it holds a first preferred mortgage on the Witdock for one million dollars, and that it spent $800,000 to convert the vessel into a submersible dry dock. *Id.* ¶¶ 31, 289(2).

no new counsel for plaintiffs appeared, the District Court directed the defendants to file a motion to dismiss for lack of prosecution [ECF 29], and defendants did so on September 30, 2013 [ECF 30].

On October 10, 2013, Oelsner, purporting to act on behalf of the West Indies Transport Company, Inc. ("WITCO") as agent for the plaintiffs,[5] requested additional time to obtain counsel, citing financial difficulties. [ECF 31] at 1–2. Oelsner also stated that until such time as the plaintiffs were able to obtain counsel and amend the complaint to name certain GVI agencies as defendants, WITCO was attempting to negotiate settlement with the federal and local government agencies. *Id.* at 2.

In an October 24, 2013 Order, the District Court denied the plaintiffs' request for extension and granted the defendants' motion to dismiss. [ECF 34]. That same day, Oelsner filed a motion to intervene and replace the Witdock Corporation. [ECF 35]. He also sought to add as new defendants Lynn Millin Maduro, Commissioner DP&P; Alicia Barnes, Commissioner DPNR; and Castillio Nelson representing Castillion Recycling, LLC. *Id.* at 3. Oelsner stated he was "the owner of all the shares of the Witdock Corporation," which owns the barge Witdock. *Id.* ¶ 1. He again claimed that WITCO succeeded CCS as agent for the plaintiffs, and stated he is president of WITCO. *Id.* at 3–4. He suggested that when the corporate plaintiffs' cashflow problem was resolved, they would hire counsel, and in the meantime, he would obtain from them any documents needed to prosecute the case. *Id.* at 4.

On December 20, 2013, the Court denied Oelsner's motion to intervene. [ECF 37]. Oelsner then moved to supplement his intervention motion and submitted proposed orders granting

---

[5] Oelsner stated that on October 1, 2012, WITCO succeeded CCS as agent for each of the other plaintiffs. [ECF 31] at 1.

intervention and adding additional defendants, substituting WITCO as plaintiff for CCS, and providing injunctive relief. *See* [ECF 38]. He also moved for reconsideration of the Court's Orders denying the plaintiffs additional time to obtain counsel and granting defendants' motion to dismiss, and denying intervention. *See* [ECFs 39–41]. On March 5, 2014, the Court denied reconsideration. [ECF 45].

**B. The Instant Action**[6]

Oelsner filed his *pro se* complaint in this case on July 1, 2014, alleging claims relating to the confiscation and dismantling of the barge Witdock, and seeking monetary damages and other injunctive and declaratory relief. [ECF 1].[7] He amended the complaint in August 2015. [ECF 52]. Oelsner alleges federal question jurisdiction based on the Fifth and Fourteenth Amendments to the U.S. Constitution, 48 U.S.C. §§ 1705 and 1706 (the Submerged Lands Act), 33 U.S.C. § 1311 (the Clean Water Act), 33 U.S.C. § 401 (the Rivers and Harbors Act), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 1391. [ECF 52] at 1, 6–7.

According to the amended complaint, Witdock is owned by the Witdock Corporation and valued at $2.5 million dollars. [ECF 52] at 4. Oelsner states he is "the nominee owner of the

---

[6] All ECF citations in subsection B and the sections that follow refer to Civil No. 2014-62, unless otherwise noted.

[7] Plaintiff brought this action against several federal officials and agencies; Lynn Millin Maduro, Commissioner DP&P; Alicia Barnes, Commissioner DPNR; and Miguelina Rodriguez and Nilson Perez, Castillio Recycling. *See* [ECF 1]. The federal defendants moved to dismiss for failure to state a claim and lack of jurisdiction. [ECF 29]. Plaintiff then moved to dismiss the complaint against those defendants [ECF 38], and on April 13, 2015, the District Court granted plaintiff's motion and dismissed the federal defendants. [ECF 39].

At a July 16, 2015 status conference before the undersigned Magistrate Judge, the Court directed plaintiff to complete the non-prisoner *pro se* complaint form so as to better clarify his claims and identify the appropriate parties. Plaintiff filed his amended complaint on August 7, 2015 by completing the Court-approved form and attaching several excerpts from his original complaint. *See* [ECF 52]. The amended complaint names DP&P Commissioner Rudolph Bennett, DPNR Commissioner Dawn Henry, and Nilson Perez as defendants. *Id.* at 2–3.

On February 1, 2021, the District Court adopted the undersigned's March 30, 2017 Report and Recommendation [ECF 68] and entered default against Nilson Perez, but denied plaintiff's request for default judgment. [ECF 72].

Witdock Corporation" and that he has "a $300,000 second mortgage on the barge Witdock," which he earned for "acting as AMSCO's salvage master for multiple vessels." *Id.* at 4, 21. The complaint alleges the GVI hired Perez, a scrap contractor, to dismantle and remove the Witdock and other vessels, and that in doing so, the government confiscated the barge without due process or just compensation. *Id.* at 4–5.[8] The complaint further alleges Perez's actions caused $80,000 in damage to Witdock's on-deck equipment. *Id.* at 5. Though the complaint describes various events dating back to the 1990s, the alleged unconstitutional taking is based on two instances of dismantling activity in 2012 and 2013. *See id.* at 4, 18–20.[9,10]

Oelsner seeks $80,000 in damages and the return of the vessel to its rightful owner. *Id.* at 5. Additionally, he seeks "declaratory and injunctive relief to compel the U.S. Defendants to act according to [federal law]." *Id.* at 6. Specifically, plaintiff requests that the Court: 1) mandate that the federal agencies enforce certain laws; 2) declare that the Submerged Lands Act does not confer jurisdiction on the GVI to regulate commerce or navigation in the navigable waters of the United States; 3) mandate that the U.S. Army Corps of Engineers ("USACE") order defendant Castillio or any organization acting with the GVI to not engage in or permit dismantling of the Witdock, unless the GVI obtains a court order to do so that shows plaintiff was justly compensated;

---

[8] Oelsner clarifies that none of the vessels were actually removed. *See* [ECF 52] at 5; [ECF 66] at 1.

[9] On August 25, 2014, Oelsner moved for a temporary restraining order requiring Commissioner Maduro to invalidate an alleged contract "for dismantling and removing partially submerged vessels from Krum Bay." [ECF 27] at 1. The District Court denied plaintiff's motion on September 9, 2014, finding it was "bereft of any showing which meets the requirements for issuance of injunctive relief." [ECF 28] at 2. Oelsner subsequently moved for reconsideration [ECF 30], which the Court denied [ECF 71].

[10] The most recent update as to the condition and location of the Witdock is provided in a June 16, 2016 letter addressed to U.S. Coast Guard ("USCG") Commander Newton, and signed by Oelsner on behalf of AMSCO and WITCO. [ECF 66-2] at 1–3. That letter states "[w]e have removed much of the debris which the V.I. Government's Scrap Contractor left on the Witdock's deck," and proposes a plan to refloat the Witdock and another barge. *Id.* at 1.

4) declare that plaintiff's rights in the Witdock cannot be ignored by the GVI and that the Submerged Lands Act does not confer jurisdiction on the government to confiscate plaintiff's property; 5) mandate that the GVI release the Witdock to its USCG-documented owner and compensate the owner and bareboat charterer for damages caused by its seizure and dismantling; 6) mandate that the USCG and USACE authorize the continued mooring and ballasting down of the Witcargo and other WIT vessels; 7) mandate that the USACE grant to plaintiff's agent WITCO the right to offer use of the tug Witservice to local contractors for marine protection efforts; 8) order the GVI to provide plaintiff copies of documents relating to the dismantling of Witdock; 9) declare that plaintiff and his agent WITCO have a continuing vehicular easement to access the WIT vessels; and 10) grant any further necessary relief to protect plaintiff's rights and the public interest. *Id.* at 22–25.[11]

On September 30, 2015, the GVI moved to dismiss the amended complaint for lack of jurisdiction and failure to state a claim. [ECF 62]. The government argues first that plaintiff fails to explain how any of the statutes referenced in the complaint grant him standing or establish federal question jurisdiction. [ECF 63] at 7. Moreover, none of the cited statutes give rise to a viable cause of action against the GVI here. *Id.* at 8–10. The government next argues that direct constitutional claims may not be brought against territorial defendants, and that to the extent the Court construes plaintiff's claims under 42 U.S.C. § 1983, that statute does not establish jurisdiction because the GVI is not a "person" within the meaning of § 1983. *Id.* at 10–11. The government acknowledges that territorial officials may be sued under § 1983 for prospective

---

[11] In his amended complaint, plaintiff dropped his request that the Court mandate the USACE to grant to the Witconcrete II's owner/bareboat charterer the right to refloat that vessel and return it to its mooring. *See* [ECF 52] at 5, 23.

injunctive relief, but argues plaintiff has no standing here to seek such relief. *Id.* at 11. Rather, the claims Oelsner asserts "belong solely to the corporations he is associated with," and "are not ones which he can bring individually on behalf of a corporation." *Id.* at 13. The GVI further contends that all of plaintiff's claims are barred by the applicable statute of limitations under either § 1983 or the Virgin Islands Tort Claims Act. *Id.* at 14–15. Finally, citing the *Contract Carrier* case, the government argues the doctrine of res judicata bars the claims asserted here. *Id.* at 16–19. The government concludes by requesting that if the Court denies its motion, that plaintiff be required to replead his complaint in accordance with the Federal Rules. *Id.* at 19–20.

In his opposing brief, Oelsner first acknowledges that the government has advanced several arguments as to why the Court is barred from hearing this case. [ECF 65] at 1.[12] Rather than refute those arguments, Oelsner states he is "unfamiliar with such technicalities" and that "this Court is best qualified to judge its jurisdiction." *Id.* Oelsner next questions how the government can "claim immunity from being held accountable for violating provisions of the [Constitution]," when it is that document that "permitted the very existence of the USVI." *Id.* at 2–3. As to the government's statute of limitations argument, Oelsner contends his complaint was timely filed within two years of an October 2013 letter from DPNR. *Id.* at 3. He further suggests that his constitutional right to protection of private property against government seizure should not be legislatively-restricted or nullified by a limitations period, and avers he has "done all in his power to protect his interest in the Witdock and to advise all Government agencies of the [] improper confiscation." *Id.* at 3–4. As to the government's res judicata argument, Oelsner contends

---

[12] Oelsner states the government's motion mistakenly refers to his "Clarifying Complaint" as "amended" rather than "clarifying." *See* [ECF 65] at 1. The Court finds this is a difference in semantics more than substance, and has no bearing on the Court's resolution of the instant motion.

*Contract Carrier* "was never judged 'on the merits' and was only dismissed 'procedurally' due to lack of prosecution." *Id.* at 4. Finally, plaintiff apologies for any inadequacy in his pleading and points to other filings that may be helpful. *Id.* at 5.

On May 19, 2023, the District Court referred defendants' motion to the undersigned for a Report and Recommendation. [ECF 75].

## II.     LEGAL STANDARDS

### A. Federal Court Jurisdiction

"Federal courts are courts of limited jurisdiction . . . [and] it is to be presumed that a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception, for . . . [w]ithout jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (internal quotations and citations omitted). Federal courts thus have an absolute duty to verify subject matter jurisdiction if it is in doubt, and must dismiss an action where jurisdiction is lacking. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Federal district courts have jurisdiction only in matters involving a federal question, diversity of citizenship, or other limited statutorily provided areas. *See* 28 U.S.C. § 1330 *et seq.* For a claim to arise under the Constitution, laws, or treaties of the United States, a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's cause of action. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (1974). Relevant to the instant case, the federal Declaratory Judgment Act "enlarge[s] the range of

remedies available in the federal courts," but the Act itself is not a means to establish federal court jurisdiction. *McCahill v. Borough of Fox Chapel*, 438 F.2d 213, 214 (3d Cir. 1971) (citation omitted); *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979) ("The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions.").[13]

Additionally, standing is a threshold matter of jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *accord Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016), and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In other words, "is this the right person to bring this claim?" *Davis*, 824 F.3d at 348. The doctrine encompasses "both the case and controversy requirements of Article III of the Constitution and certain prudential requirements," *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994), "both of which must be satisfied before a litigant may seek redress in the federal courts." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).[14]

"[T]he 'irreducible constitutional minimum' of standing consists of three elements[:] The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "These

---

[13] The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

[14] "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co.*, 523 U.S. at 102. Although the District Court of the Virgin Islands is an Article IV court, its exercise of the jurisdiction of a district court is subject to the limitations of Article III. *Russell v. DeJongh*, 491 F.3d 130, 133 n.3 (3d Cir. 2007).

requirements 'ensure that plaintiffs have a personal stake or interest in the outcome of the proceedings, sufficient to warrant their invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on their behalf.'" *Ballentine v. United States*, 486 F.3d 806, 814 (3d Cir. 2007) (citation omitted). "[A] plaintiff must demonstrate standing for each claim he seeks to press . . . [and] 'each form of relief sought.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro*, 458 F.3d at 188.

"In addition to the 'immutable requirements of Article III,'" *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 485 (3d Cir. 1998) (citation omitted), "[p]rudential considerations further limit a plaintiff's ability to establish . . . standing." *Wheeler*, 22 F.3d at 538.

> These considerations require that: (1) a litigant assert his own legal interests rather than those of third parties; (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances; and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based.

*Id.* (internal quotations and citations omitted). These limits serve, in part, "to limit access to the federal courts to those litigants best suited to assert a particular claim." *Id.* (citation omitted).

**B. Rule 12(b)(1)**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see also Ballentine*, 486 F.3d at 810 ("A motion to dismiss for want of standing is also properly brought pursuant to

Rule 12(b)(1), because standing is a jurisdictional matter.").

Rule 12(b)(1) movants may assert either a facial or factual attack on the court's subject matter jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint," while the latter "attacks the factual allegations underlying the complaint's assertion of jurisdiction" by presenting competing facts. *Id.* Stated another way, "a facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (alterations in original) (internal quotations and citations omitted). Though a "facial attack offers the plaintiff the safeguard of requiring the court to consider the allegations of the complaint as true, the factual attack allows the court to 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Doe v. Goldstein's Deli*, 82 F. App'x 773, 775 (3d Cir. 2003) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Thus, in assessing whether it has jurisdiction in the latter case, "[t]he court may consider . . . evidence outside of the pleadings." *Id.*[15]

Finally, "[t]he plaintiff always bears the burden of convincing the court, by a preponderance of the evidence, that the court has jurisdiction." *Doe*, 82 F. App'x at 775; *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) ("The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the

---

[15] "A factual challenge may occur only after the allegations of the complaint have been controverted." *Abiff v. Yusuf*, 49 V.I. 947, 950 (D.V.I. 2008); *see Mortensen*, 549 F.2d at 891–92 n.17 (explaining that a Rule 12(b)(1) "factual evaluation may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed," but "cannot occur until plaintiff's allegations have been controverted"); *see also Aichele*, 757 F.3d at 358 (a facial "attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint").

litigation."); *see also Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of proving standing."); *Spokeo*, 578 U.S. at 338 (where a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element of Article III standing); *accord Ballentine*, 486 F.3d at 810.

### III.  DISCUSSION

Standing and prudential considerations attendant thereto are where this Court's inquiry begins and ends. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Trump*, 140 F.3d at 484 (citation omitted). The answer in this case is no.

As set forth above, Article III standing consists of three elements. Primarily at issue here is the first element, injury in fact. To meet this requirement, Oelsner must show that he suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (citation omitted). To be "concrete," the "injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340. Thus, the question here is whether Oelsner has sufficiently shown that the GVI's alleged taking of the Witdock resulted in an actual, concrete and particularized injury to a legally protected interest of Oelsner.[16] The Court finds that

---

[16] While Oelsner purports to invoke federal court jurisdiction pursuant to 48 U.S.C. §§ 1705 and 1706 (the Submerged Lands Act), 33 U.S.C. § 1311 (the Clean Water Act), and 33 U.S.C. § 401 (the Rivers and Harbors Act), the complaint does not allege any claims under these statutes. Additionally, Oelsner cites 28 U.S.C. § 2201 (declaratory relief), but that statute also does not confer federal court jurisdiction. *See McCahill*, 438 F.2d at 214 (the Act "is procedural only" (citation omitted)); *Cutaiar*, 590 F.2d at 527 (the Act "does not create a basis of jurisdiction"). Finally, Oelsner cites 28 U.S.C. § 1391, which governs venue. Moreover, even if the complaint did allege a claim under any of these statutes, the Supreme Court in *Spokeo* held that "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize [a suit] to vindicate [it]" because "Article III standing requires a concrete injury even in the context of a statutory violation." 578 U.S. at 341;

*Oelsner v. Virgin Islands Department of Property and Procurement, et al.*
Civil No. 2014-62
Page 13

he has not.

The Fifth Amendment prohibits the government from taking private property without just compensation. *See* U.S. Const. Amend. V.; *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012) ("The Takings Clause applies to state action through the Fourteenth Amendment.").[17] Here, however, the property at issue does not belong to Oelsner—the complaint unequivocally states that Witdock Corporation is the owner of the Witdock. Even assuming Oelsner does have a legally protected interest because he holds a second mortgage on the vessel, he has not alleged an actual, concrete injury particular to him. *See Spokeo*, 578 U.S. at 339–41; *Mielo*, 897 F.3d at 479 n.11. Rather, the gravamen of the complaint is that the GVI unlawfully and without due process or just compensation confiscated a vessel owned by the Witdock Corporation by hiring a scrap contractor to dismantle and remove it, and that the contractor caused $80,000 in damages to the vessel's on-deck equipment. *See* [ECF 52] at 4–5. Thus, notwithstanding Oelsner's assertion that he is the "nominee owner of Witdock Corporation," *id.* at 4, Oelsner does not assert that he personally suffered an injury at all.

The Court's finding is underscored by the relief sought. Oelsner seeks $80,000 for the damage Perez allegedly caused to the Witdock's on-deck equipment, plus the return of the vessel

---

*see also Mielo v. Steak'n Shake Operations, Inc.*, 897 F.3d 467, 479 n.11 (3d Cir. 2018) (clarifying that the phrase "invasion of a legally protected interest" is "a distinct component of the injury in fact inquiry").

[17] The complaint here purports to bring a takings claim directly under the constitution—something that the Fifth Circuit has recently rejected. *See Devillier v. Texas*, 53 F.4th 904 (5th Cir.) (holding that "the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state"), *cert. granted*, 144 S. Ct. 477 (2023). The Supreme Court has held, however, that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it . . . and therefore may bring his claim in federal court under § 1983." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167–68 (2019). The Supreme Court has further held that the "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (citation omitted). Thus, as a general proposition, a complaint alleging deprivation of a constitutional right can state a claim for relief without directly referencing § 1983.

to its rightful owner. *See* [ECF 52] at 5. But Oelsner does not own the vessel, nor does he become the owner in the event of a favorable decision in this case. Further, the complaint contains no allegations that he personally purchased or owned the damaged equipment, and he therefore also would not be the recipient of a damages award. If the Court were to award damages, it appears the money would be owed to the Witdock Corporation, or perhaps to AMSCO (the entity that reportedly invested $800,000 in the Witdock's conversion). Thus, the way Oelsner has framed his complaint shows that he is seeking the benefit of recovery to which Witdock Corporation—and not Oelsner himself—would be entitled. As such, even if Oelsner had sufficiently shown an injury in fact, that injury would not be redressed by a favorable decision of this Court.[18]

Moreover, Oelsner admitted that he filed this suit solely to "keep the issues alive before this Court" until such time as the *Contract Carrier* plaintiffs are able to obtain counsel and file an appropriate complaint against the federal and territorial government agencies. [ECF 65] at 4.[19] Indeed, a comparison of Oelsner's amended complaint here and the *Contract Carrier* complaint reveals that Oelsner copied and pasted much from the latter and simply substituted himself as "plaintiff" where the *Contract Carrier* pleading referred to the entity parties.[20] Thus, Oelsner also

---

[18] To the extent Oelsner requests declaratory and injunctive relief directed to the GVI and others, he does not identify any cause of action that would entitle him to such relief, and "federal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them." *Wheeler*, 22 F.3d at 538 n.8 (citation omitted); *cf. Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Steel Co.*, 523 U.S. at 107 ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."); *Mielo*, 897 F.3d at 481 ("Courts must be cognizant of the rule that a remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." (internal quotations and citation omitted)).

[19] *See also* Civil No. 2012-68 [ECF 31] (informative motion on behalf of plaintiffs) and [ECF 35] (motion to intervene).

[20] For example, paragraphs A, B, and G of Oelsner's requested relief are copied verbatim from the complaint in *Contract Carrier*. Oelsner's paragraphs C and D are largely identical to the requests made in *Contract Carrier*, and

Case: 3:14-cv-00062-WAL-RM    Document #: 78    Filed: 03/05/24    Page 15 of 17

*Oelsner v. Virgin Islands Department of Property and Procurement*, et al.
Civil No. 2014-62
Page 15

cannot meet the prudential limitation on standing that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Trump*, 140 F.3d at 485 (citation omitted).[21] Nor has Oelsner cited authority to show that the claims asserted here are ones that he may bring on behalf of the Witdock Corporation, or any other entity.[22] As a result, for this reason also Oelsner does not have standing to bring this suit.

---

merely substitute "the Barge Witdock" and "the rights of plaintiff Oelsner" in place of "the Wit vessels" and "the rights of Plaintiff AMSCO . . . , Plaintiff Witdock Corp. . . . , and Plaintiff CCS." *Compare* Civil No. 2014-62 [ECF 52] at 22–24, *with* Civil No. 2012-68 [ECF 1] at 83–84, 94–96.

[21] The Supreme Court has cautioned that:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of *stare decisis*.

*Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976) (citations omitted).

[22] "It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993). In the context of harm to a corporation, the third-party standing doctrine "has given rise to the 'so-called shareholder standing rule,' which is 'a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment.'" *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022) (citation omitted) (holding that "the shareholder standing rule is non-jurisdictional, implicating only a plaintiff's power to bring his claims, not the Court's power to hear them"); *see also Malpere v. Ruyter Bay Land Partners, LLC*, 2004 WL 3267278, at *2 (D.V.I. Dec. 22, 2004) (members lacked standing to bring claims on behalf of homeowner's association, where "claims, if proven, would inure to the benefit of the [association]," and members' claims were thus derivative of association's rights); *Pemberton Sales & Serv., Inc. v. Banco Popular de Puerto Rico*, 877 F. Supp. 961, 965 (D.V.I. 1994) ("A stockholder, director, officer, or employee of a corporation may not recover for damages to an individual which are derived from an injury to the corporation."); *Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 316–17 (E.D. Pa.) ("It is well established that a stockholder, director, officer or employee of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation."), *aff'd*, 981 F.2d 1248 (3d Cir. 1992); *cf. Taliaferro*, 458 F.3d at 189 n.4 ("[l]itigants may bring an action on behalf of third parties only in limited circumstances," and one of the necessary requirements is that "the litigant has suffered an injury in fact").

In sum, the essence of Oelsner's complaint is that the Witdock Corporation's property was injured, and relief would benefit the Witdock Corporation. Oelsner has alleged no actual or threatened injury distinct to him that is separate from the corporation's injury, nor has he shown that he should be permitted to litigate this action on behalf of the corporation. Accordingly, he "cannot be said to 'have a personal stake in the litigation' sufficient to warrant his invocation of federal-court jurisdiction or to justify exercise of the Court's remedial powers on his behalf." *Ballentine*, 486 F.3d at 814 (citation omitted). The Court therefore finds that Oelsner lacks standing to bring this action.

## IV.  CONCLUSION

The Third Circuit's observation in *Wheeler* nearly 30 years ago still rings true today:

> The district courts are coping with large volumes of litigation, and parties with real losses frequently are delayed in obtaining adjudications on the merits. The mission of the federal courts best can be fulfilled if the courts recognize and enforce the constitutional and prudential limitations on the exercise of their jurisdiction. That way the courts will have time to devote to claims by parties who actually have been injured and may be entitled to relief on their own behalf.

22 F.3d at 539–40. Plaintiff here fails to allege sufficient facts to establish his standing and thus this Court's subject matter jurisdiction.

Accordingly, the premises considered, it is hereby RECOMMENDED that the motion to dismiss be granted.[23]

---

[23] Because the undersigned recommends that this action be dismissed for lack of subject matter jurisdiction based on plaintiff's lack of standing, the Court need not address defendants' additional arguments. *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993) ("When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot."), *aff'd*, 39 F.3d 61 (3d Cir. 1994); *see Mortensen*, 549 F.2d at 895 n.22 ("if the court lacks jurisdiction to hear the case then a fortiori it lacks jurisdiction to rule on the merits"). The Third Circuit has instructed that such dismissal should be without prejudice. *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 209 (3d Cir. 2021) ("Because the absence of standing leaves the court without

Case: 3:14-cv-00062-WAL-RM   Document #: 78   Filed: 03/05/24   Page 17 of 17

*Oelsner v. Virgin Islands Department of Property and Procurement*, et al.
Civil No. 2014-62
Page 17

Any objections to this Report and Recommendation must be filed in writing within 14 days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

Dated: March 5, 2024                         S_____
                                             **RUTH MILLER**
                                             United States Magistrate Judge

---

subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper." (citation omitted)).

While a plaintiff should generally be given leave to amend when his complaint is subject to dismissal under Rule 12(b)(6), a court need not offer amendment when amending would be futile or inequitable. *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010); *see Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (where complaint pleads civil rights claims, court must permit curative amendment even if plaintiff does not request it, but in "ordinary" civil litigation, plaintiff must move for leave to amend, and court has no duty to *sua sponte* consider allowing amendment); *see also Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) ("The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."). Here, the District Court may deny leave to amend if it determines that res judicata bars the claims asserted, or that plaintiff cannot plead facts to support Article III standing. *See, e.g., Great W. Min. & Min. Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 765 (D.N.J. 2012) (finding amendment would be futile where claims were barred by res judicata), *aff'd*, 533 F. App'x 132 (3d Cir. 2013); *Hatchigian v. Carrier Corp.*, 2021 WL 4941332, at *3 (E.D. Pa. Oct. 21, 2021) (a "finding that the claims are barred on *res judicata* renders any possible amendment futile"); *InvenTel Prod., LLC v. Li*, 406 F. Supp. 3d 396, 408 (D.N.J. 2019) (denying leave to amend as futile, finding "amended pleadings will not create standing"); *Kajmowicz v. Whitaker*, 2021 WL 2200795, at *10 (W.D. Pa. June 1, 2021) (reasoning that "if Plaintiff could, in good faith, plead facts that would support Article III standing, he would have done so by now," and concluding amendment would be futile), *aff'd*, 42 F.4th 138 (3d Cir. 2022).